# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WISH Acquisition, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>Christopher Salvino,<br><br>    Defendant. | No. 07 C 4756<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

The parties here cross-appeal from a final order of the United States Bankruptcy Court for the Northern District of Illinois. Plaintiff-Appellant WISH Acquisition, LLC ("WISH") appeals the Bankruptcy Court's holding that debt owed by Defendant-Appellee Christopher Salvino ("Salvino") was not subject to the non-dischargeability provisions of 11 U.S.C. § 523(a)(6). Salvino cross-appeals (1) the Bankruptcy Court's admission into evidence of WISH's liquidated damages, and (2) the Bankruptcy Court's holding that the liquidated damages penalty in his employment agreement was an enforceable contract provision. For the foregoing reasons, all of the Bankruptcy Court's findings before me on appeal are affirmed.

## I. Procedural and Factual Background[1]

In 1992, three doctors, including Dr. Salvino, the debtor in this case, formed a company to perform bariatric (weight reduction) surgeries. By 2002, the number of surgeries the doctors were performing increased dramatically. In response to the increased demand, the doctors formed WISH Holding, LLC ("Old Wish"), through which they opened new surgical centers

---

[1]This section is largely drawn from the Bankruptcy Court's opinion. *See Wish Acquisition, LLC v. Salvino (In re Salvino)*, 373 B.R. 578 (Bankr. N.D. Ill. 2007) [hereinafter *In re Salvino*].

around the country. To finance the expansion, Old Wish relied on a $2.5 million term loan and $4 million line of credit from American Chartered Bank. These loans were secured in part by personal guarantees from Salvino and the other doctors.

In January 2005, Old Wish defaulted on its loans. In an effort to pay back the debt and avoid liquidation, Old Wish contacted two potential investors, Com Vest Partners ("Com Vest") and Incubator Investments ("Incubator"). Stephen Winslett, a partner at Com Vest, performed due diligence on Old Wish for the investors. In February 2005, after *initial* due diligence, Com Vest and Incubator purchased a $500,000 participation in Old Wish's debt. Throughout the due diligence and after its completion, Salvino told Com Vest that he would stay with the company for 3 to 5 years. The investors made it clear that they would not invest in Old Wish without Salvino's promise to stay with the company.

After completing his due diligence, Winslett concluded that Com Vest should not invest in Old Wish, noting significant problems with billing, overstated accounts receivables, and poor management. Despite these findings, Com Vest and Incubator formed a new company, WISH Acquisition, LLC (Plaintiff-Appellant here), in order to purchase Old Wish's debts and assets. WISH closed on the purchase of Old Wish's debts on April 22, 2005. That same day, Old Wish filed Chapter 11 bankruptcy to facilitate the purchase. In conjunction with the debt purchase, WISH executed an employment agreement with Salvino that included a five-year commitment to stay with the company. WISH agreed to forgive all but $1.5 million of Salvino's personal guaranty of the bank loan.

Before Old Wish filed bankruptcy, Salvino began seeking alternative employment with other companies. On April 11, 2005 he entered into an employment contract with iVOW, a

2

WISH competitor, but withdrew his signed contract a few days before the Old Wish bankruptcy filing. Salvino did not disclose his search for alternative employment to WISH.

In August 2005, after the bankruptcy court approved of the sale of Old Wish's assets to WISH, WISH agreed to amend Salvino's employment contract. The amended employment contract released Salvino from his $1.5 million personal guaranty, but retained the five-year employment commitment. The new contract also inserted a liquidated damages clause according to which damages were fixed at $1.5 million if Salvino terminated the contract without breach by WISH during the first year, at $1,125,000 during the second year, at $750,000 during the third year, and at $375,000 during the fourth year.

WISH completed the purchase of Old Wish's assets on September 7, 2005. Within seven days of the completed purchase, Salvino sought employment as a Trauma Director at John C. Lincoln Hospital and did not disclose this search to WISH. Meanwhile, WISH was unable to stabilize the business and by March 2006, WISH decided to stop funding the company. The parties do not dispute that WISH lost more than $9.1 million on its investment.

On October 14, 2005, Salvino and his wife filed for Chapter 7 bankruptcy, seeking discharge of their personal debts, including Salvino's liability under the liquidated damages provision of his employment with WISH. On February 4, 2006, Salvino accepted part-time employment as Trauma Director at John C. Lincoln. By March 1, 2006 - within the first year of his employment contract with WISH - Salvino was working at John C. Lincoln full-time.

In May 2006, WISH filed a complaint in Bankruptcy Court seeking to determine the non-dischargeability of Salvino's debt pursuant to 11 U.S.C. §§ 523(a)(2) and 523(a)(6) and requesting a declaratory judgment that Salvino's duties and obligations under his covenant not to

compete were nondischargeable.[2] Following trial, the Bankruptcy Court entered judgment for Salvino, holding that WISH did not establish any debts owed by Salvino were nondischargeable. *In re Salvino*, 373 B.R. at 581. The Bankruptcy Court found that (1) the only false representations that WISH proved were not shown to have resulted in a debt, and (2) the only debt that WISH did prove at trial - the $1.5 million arising from breach of an employment contract - was not shown to have arisen from willful and malicious injury. *Id.* WISH appeals only the part of the Bankruptcy Court's decision that § 523(a)(6) does not bar the discharge of Salvino's debt for willful and malicious injury. Salvino's cross-appeal challenges the Bankruptcy Court's admission into evidence of WISH's liquidated damages and the Bankruptcy Court's finding that the liquidated damages provision in the employment contract was enforceable.

## II. DISCUSSION

*A. Standard of Review*

A federal district court has jurisdiction, pursuant to 28 U.S.C. § 158 (2006), to hear appeals from the bankruptcy court. On appeal, I review the bankruptcy court's findings of fact for clear error and review its conclusions of law *de novo*. *In re Midway Airlines, Inc.*, 383 F.3d 663, 668 (7th Cir. 2004); *see also* FED. R. BANKR. P. 8013. I review the Bankruptcy Court's evidentiary rulings for an abuse of discretion. *In re Salem*, 465 F.3d 767, 777-778 (7th Cir. 2006).

---

[2] Neither at trial nor in post-trial argument did WISH raise its request for a declaratory judgment regarding Salvino's duties under the covenant not to compete. The Bankruptcy Court deemed these claims waived, and they are not before this Court on appeal. *See* 373 B.R. at 592 n.12.

*B. Non-Dischargeability Under 11 U.S.C. § 523(a)(6)*

In finding that § 523(a)(6) did not bar the discharge of Salvino's debt for willful and malicious injury, the Bankruptcy Court concluded "that a breach of contract not involving tortious conduct is outside the scope of § 523(a)(6)." *In re Salvino*, 373 B.R. at 591. WISH does not dispute the finding that there was no independent tort in this case. Rather, WISH appeals the bankruptcy court's finding of law that tortious conduct is an essential element of a claim of nondischargeability under § 523(a)(6). This interpretation of §523(a)(6) is a question of law and therefore I review it *de novo*.

Under 11 U.S.C. § 523(a)(6), a debtor is not discharged from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." Whether WISH's $1.5 million claim for breach of contract is nondischargeable under this section depends on the extent to which "willful and malicious injury" includes intentional breaches of contract, like Salvino's breach of the employment contract here. The Supreme Court examined the language of this section and concluded that it applies to "acts done with the actual intent to cause injury" and not to acts, done intentionally, that cause injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (holding that Section 523(a)(6) does not except from discharge debts arising from negligently or recklessly inflicted injuries). "Willful," as used in the provision, "modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Id*. The court noted that the language of Section 523(a)(6) mirrors the definition of an intentional tort, which requires an actor to "intend 'the *consequences* of an act,' not simply 'the act itself.'" *Id*. At 61-62 (*citing Restatement (Second) of Torts* § 8A cmt. a (1964)).

5

Circuit courts are split on the question of whether or not, after *Geiger*, an intentional breach of contract can constitute a "willful and malicious injury" under § 523(a)(6), absent some form of tortious conduct. The Fifth Circuit (as well as an unreported case from the Tenth Circuit) has held that any breach of contract is nondischargeable as a willful and malicious injury if the debtor either intended to injure the other party to the contract by breaching it or if injury to the other party was substantially certain to result from the breach. *See In re Williams*, 337 F.3d 504, 510 (5th Cir. 2003); *Texas v. Walker*, 142 F.3d 813, 823 (5th Cir. 1998); *In re Sanders*, 2000 WL 328136, at * (10th Cir. Mar. 29, 2000). On the other hand, the Ninth Circuit (as well as an unreported case from the Sixth Circuit) has held that "to be excepted from discharge under § 523(a)(6), a breach of contract must be accompanied by some form of 'tortious conduct' that gives rise to 'willful and malicious injury.'" *In re Jericich*, 238 F.3d 1202, 1206 (9th Cir. 2001); *see also In re Best*, 109 Fed.Appx. 1 (6th Cir. 2004).

The Seventh Circuit has not addressed the question directly, although in *In re Hallahan*, the Seventh Circuit affirmed a judgment of nondischargeability under § 523(a)(6) arising out of a breach of a covenant not to compete where the debtor conceded he breached the contract willfully. 936 F.2d 1496. The issue of whether § 523(a)(6) requires tortious conduct was neither presented on appeal nor discussed by the court. *Id*. at 1499. The weight of *Hallahan* is undermined by the fact that it is a pre-*Geiger* decision. Furthermore, language from *Hallahan* is inconsistent with the holding of at least one subsequent, unpublished Seventh Circuit case that clearly states § 523(a)(6) is intended to prevent the discharge of debts as a result of *intentional torts*. *In re Pickens*, 2000 WL 1071464, *1 (7th Cir. Aug. 1, 2000) (emphasis added) (*citing Geiger*, 523 U.S. at 64).

6

Noting the circuit split, the Bankruptcy Court concluded the better reading of § 523(a)(6) is the one requiring tortious conduct as an essential element of a "willful and malicious injury." After careful review, I agree with the Bankruptcy Court's four considerations that compel this conclusion: (1) the common application of "willful and malicious" strongly suggests its limitation to torts, making nondischargeable only debts arising from the same sort of conduct that the common law discourages by punitive damages; (2) the reenactment of the "willful and malicious injury" standard for nondischargeability from the Bankruptcy Act of 1898 indicates Congress' presumptive intent to continue the established practice of limiting its application to tortious conduct; (3) the common law definition of "willful and malicious" applied by the Fifth Circuit, which encompasses not only actual intent to harm but also intentional acts that the debtor believes are substantially certain to cause harm, was not developed in connection with breach of contract, and when applied in the context of § 523(a)(6) dramatically expands the number of nondischargeable debts and diminishes the scope of bankruptcy discharge; and (4) making intentional breaches of contract nondischargeable under § 523(a)(6) would create substantial tension with § 365(a) of the Bankruptcy Code, which authorizes a debtor to intentionally breach a contract if doing so will maximize the value of the debtor's property.

Adding further, *Geiger's* examination of the language of § 523(a)(6) makes clear that debt arising out of a simple breach of contract absent a showing that the purpose of the breach was to cause injury is not a nondischargeable debt within the meaning of § 523(a)(6). Cases interpreting "willful and malicious" injury have uniformly held that it refers to either a debtor's subjective motive to inflict injury or a debtor's belief that injury was substantially certain to occur as a result of his conduct. *Geiger*, 523 U.S. at 61; *In re Basel-Johnson*, 366 B.R. 831, 849

7

(Bankr. N.D. Ill. 2007). But the willful and malicious prongs of the section cannot be collapsed into a single inquiry. An intentional breach of contract is certainly willful, but it need not be malicious. The vast majority of contracts are entered into for reasons of pecuniary gain, and the foreseeable consequences of breach are also pecuniary. Thus, a party may intentionally breach a contract with the knowledge that an injury may result, but the nature of the injury is in large part foreseeable, and, more importantly, assumed by both parties as part of the risk, or cost, of doing business. The injury is real, but it is not "malicious" in the sense that it deserves exception from discharge under the Bankruptcy Code. This is especially true in light of the general rule that exceptions to discharge should be narrowly construed, in order to effectuate the mostly-still-intact congressional policy of permitting bankrupts a fresh start. *In re Kimzey*, 761 F.2d 421, 424 (7th Cir. 1985). Without the tortious conduct requirement, the exception under § 523(a)(6) would be unduly expanded and the opportunity for a fresh start post-bankruptcy would be thwarted. A primary purpose of bankruptcy legislation is to "relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." *Local Loan Col. v. Hunt*, 292 U.S. 234, 244 (1934). This purpose would be frustrated if debt incurred as the result of business judgment rose to the level of intentional injury within the meaning of § 523(a)(6). Something more must be required. For these reasons, I find that a debt arising from an intentional breach of contract standing alone is insufficient to except a debt from discharge for willful and malicious injury. Therefore, the Bankruptcy Court's finding that tortious conduct is an essential element of a "willful and malicious" injury under § 523(a)(6) is affirmed.

       B. *Liquidated Damages*

On cross-appeal, Salvino argues that the Bankruptcy Court erred in admitting evidence of WISH's liquidated damages under the employment contract because WISH did not provide a disclosure nor computation of those damages prior to trial. He also cross-appeals the Bankruptcy Court's holding that the liquidated damages penalty in his employment agreement was an enforceable contract provision. In order to prevail, Salvino must show that the Bankruptcy Court abused its discretion, and that the ruling worked "to his actual and substantial prejudice." *Walker v. Mueller Indus., Inc.*, 408 F.3d 328, 334 (7th Cir. 2005).

The Bankruptcy Court applied the appropriate legal standard for determining the enforceability of a liquidated damages provision: whether (a) "the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach and (b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation." 373 B.R. at 587 (*quoting Bauer v. Sawyer*, 134 N.E.2d 329, 333 (1956)). The Bankruptcy Court also considered appropriate factors in determining that the liquidated damages clause was appropriate. Salvino's special experience and services were non-fungible and essential to WISH's business, and the employment contract so provided. WISH had a $10 million investment in Salvino's medical practice and reasonably believed that Salvino was essential to the success of that practice. $1.5 million was therefore within a reasonable range of the loss that deprivation of Salvino's services was capable of causing.

Salvino has failed to show any indication that the Bankruptcy Court abused its discretion, or that he was prejudiced by these rulings, especially in light of the fact that judgment was entered in Salvino's favor on all counts of WISH's complaint. Because he has failed to do so,

9

the findings of the Bankruptcy Court with regard to the liquidated damages provision of the employment contract are affirmed.

**III. Conclusion**

For the aforementioned reasons, the judgment of the Bankruptcy Court on all issues appealed is affirmed.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: January 18, 2008